UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRIS HUBNER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>REVOLUTION LIGHTING TECHNOLOGIES, INC., ROBERT V. LAPENTA, CHARLES J. SCHAFER, and JAMES A. DEPALMA,<br><br>Defendants. | Case No.:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Chris Hubner ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Revolution Lighting Technologies, Inc. ("Revolution Lighting" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Revolution Lighting; and (c) review of other publicly available information concerning Revolution Lighting.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Revolution Lighting securities between March 14, 2014, and November 14, 2018, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Revolution Lighting purports to design and manufacture light-emitting diode ("LED") lighting solutions for industrial, commercial, and government markets.

3.      On October 17, 2018, Revolution Lighting reported preliminary financial results for third quarter 2018, with revenue expected to be $33 million, compared to guidance of $40-$41 million.   Revolution Lighting also announced that Defendant Robert V. LaPenta ("LaPenta"), its Chief Executive Officer ("CEO"), had offered to acquire all of the common stock of the Company for a price of $2.00 per share.

4.      On this news, Revolution Lighting's stock price fell $0.98 per share, or over 38%, to close at $1.58 per share on October 17, 2018, on unusually heavy trading volume.[1][1]

5.      On October 19, 2018, Revolution Lighting disclosed "an ongoing investigation by the SEC regarding certain revenue recognition practices, including bill and hold transactions that occurred between 2014 through the second quarter of 2018."

6.      On this news, Revolution Lighting's stock price fell $0.16 per share, or over 10%, to close at $1.43 per share on October 22, 2018, on unusually heavy trading volume.

7.      Then, on November 14, 2018, Revolution Lighting announced that its Transaction Committee was considering an updated proposal from LaPenta to acquire all of the Company's outstanding stock for $1.50 per share, referring in part to the SEC investigation as part of the reason LaPenta wished to take Revolution Lighting private.

8.      On this news, Revolution Lighting's stock price fell $0.55 per share, or nearly 40%, to close at $0.85 per share on November 15, 2018, on unusually heavy trading volume.

9.      Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about Revolution Lighting's

---

[1] The Company's stock traded on a split adjusted basis following a one for-ten reverse stock split, effective March 11, 2016.  All references to the stock price herein reflect the post-spilt price.

business, operations, and prospects.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) Revolution Lighting was improperly recognizing revenue for certain transactions; (ii) as a result, Revolution Lighting's financial statements were misstated; (iii) Revolution Lighting lacked adequate internal controls over financial reporting; (iv) as a result, Revolution Lighting would be subject to regulatory scrutiny and incur substantial costs; and (v) as a result of the foregoing, Defendants' positive statements about Revolution Lighting's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

10.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Revolution Lighting securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).   Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.   Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

14.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

15.    Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Revolution Lighting securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16.    Defendant Revolution Lighting is incorporated under the laws of Delaware with its principal executive offices located in Stamford, Connecticut.  Revolution Lighting's common stock trades on the NASDAQ exchange under the symbol "RVLT."

17.    Defendant LaPenta was the CEO and Chairman of the Board of Directors of the Company at all relevant times.

18.    Defendant Charles J. Schafer ("Schafer") was the Chief Financial Officer ("CFO") of the Company from January 2013 to July 10, 2015.

19.    Defendant James A. DePalma ("DePalma") has been the CFO of the Company since July 10, 2015.

20.    Defendants LaPenta, Schafer, and DePalma are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Revolution Lighting's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  Each defendant was provided with copies

of the Company's reports and press releases alleged herein to be misleading prior to, or shortly

after, their issuance and had the ability and opportunity to prevent their issuance or cause them to

be corrected. Because of their positions and access to material non-public information available

to them, each of these defendants knew that the adverse facts specified herein had not been

disclosed to, and were being concealed from, the public, and that the positive representations

which were being made were then materially false and/or misleading. The Individual Defendants

are liable for the false statements pleaded herein, as those statements were each "group-

published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS
### Background

21.     Revolution Lighting purports to design and manufacture LED lighting solutions

for industrial, commercial, and government markets.

22.     In August 2013, Revolution Lighting acquired Relume Technologies ("Relume"),

a manufacturer of LED lighting products and control systems.

23.     In April 2014, Revolution Lighting acquired Value Lighting Inc. ("Value

Lighting"), a supplier of lighting solutions to the multifamily residential market.

### Materially False and Misleading
### Statements Issued During the Class Period

24.     The Class Period begins on March 14, 2014. On that day, Revolution Lighting

filed its annual report on Form 10-K for the period ended December 31, 2013 (the "2013 10-K").

It reported revenue of $26.06 million. Regarding Revolution Lighting's revenue recognition

policy, the 2013 10-K stated:

> We recognize revenue for our products upon shipment or delivery to customers in
> accordance with the respective contractual arrangements, provided no significant
> obligations remain and collection is probable. For sales that include customer
> acceptance terms, revenue is recorded after customer acceptance. It is our policy
> that all sales are final. Requests for returns are reviewed on a case by case basis.

As revenue is recorded, we accrue an estimated amount for product returns as a reduction of revenue.

Revenues from merchandise shipped to a logistics supplier for Seesmart, who had the contractual right to return merchandise in inventory, was recognized when the merchandise was delivered by the logistics supplier to the end user. Payments received from the logistics supplier prior to recognizing the related revenue are recorded as customer deposits. During the first quarter of 2013, this arrangement was terminated.

Pursuant to agreements with distributors, which provide the distributors with the rights to purchase and resell inventory, we receive up front licensing fees for ongoing support obligations during the term of the agreement. Such fees are amortized by us over the term of the contracts which range from three to ten years. Unamortized licensing fees are included in deferred revenue in the accompanying consolidated balance sheets.

Sales taxes billed to customers are recorded on a gross basis as revenues. From time to time, we enter into multiple element arrangements to provide products and installation services. Revenues are allocated to each element based on our best estimate of the selling prices of each element.

25.     The 2013 10-K contained certifications by Defendants LaPenta and Schafer to attest that the financial information contained therein was accurate and that it disclosed any material changes to Revolution Lighting's internal controls over financial reporting.

26.     However, the 2013 10-K disclaimed any assessment of the internal controls with respect to Relume.  Revolution Lighting stated, in relevant part:

In conducting the Company's evaluation of the effectiveness of its internal control over financial reporting, management determined that the internal control systems of Relume Technologies, Inc. and Tri-State DE LLC, wholly owned subsidiaries acquired on August 22, 2013 and November 15, 2013, respectively, would be excluded from its internal control assessment, as permitted by guidance issued by the Securities and Exchange Commission. Accordingly, as of and for the year ended December 31, 2013, internal control systems underlying to approximately 24% of consolidated revenues and 14% of consolidated assets have been excluded from management's evaluation of internal control over financial reporting.

27.     On May 12, 2014, the Company filed its quarterly report on Form 10-Q for the period ended March 31, 2014 (the "1Q14 10-Q") and reported revenue of $4.95 million.

28.     The 1Q14 10-Q contained certifications by Defendants LaPenta and Schafer to attest that the financial information contained therein was accurate and that it disclosed any material changes to Revolution Lighting's internal controls over financial reporting.  Moreover, the report stated that "[t]here was no change in [the Company's] internal controls over financial reporting that occurred during the quarter ended March 31, 2014 that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting."

29.     On August 7, 2014, Revolution Lighting filed its quarterly report on Form 10-Q for the period ended June 30, 2014 (the "2Q14 10-Q") and reported revenue of $17.52 million.

30.     The 2Q14 10-Q contained certifications by Defendants LaPenta and Schafer to attest that the financial information contained therein was accurate and that it disclosed any material changes to Revolution Lighting's internal controls over financial reporting.  Under the heading "Controls and Procedures," the report stated, in relevant part:

> During the second quarter of 2014, the Company implemented new accounting systems and related modifications of processes and controls at its Relume and Lumificient subsidiaries. The Company also hired Directors of Finance at its Relume, Seesmart and newly acquired Value Lighting subsidiaries and expanded its accounting resources at its corporate headquarters and Value Lighting subsidiaries.

31.     On November 6, 2014, the Company filed its quarterly report on Form 10-Q for the period ended September 30, 2014 (the "3Q14 10-Q") and reported revenue of $26.88 million.

32.     The 3Q14 10-Q contained certifications by Defendants LaPenta and Schafer to attest that the financial information contained therein was accurate and that it disclosed any material changes to Revolution Lighting's internal controls over financial reporting.  Moreover, the report stated that "[t]here was no change in [the Company's] internal controls over financial reporting that occurred during the quarter ended September 30, 2014 that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting."

33.     On March 16, 2015, Revolution Lighting filed its annual report on Form 10-K for the period ended December 31, 2014 (the "2014 10-K").   For 2014, the Company reported revenue of $76.85 million.

34.     The 2014 10-K contained certifications by Defendants LaPenta and Schafer to attest that the financial information contained therein was accurate and that it disclosed any material changes to Revolution Lighting's internal controls over financial reporting.

35.     However, the 2014 10-K disclaimed any assessment of the internal controls with respect to Value Lighting.  Revolution Lighting stated, in relevant part:

> In conducting the Company's evaluation of the effectiveness of its internal control over financial reporting, management determined that the internal control systems of Value Lighting and All Around, wholly-owned subsidiaries acquired on April 17, 2014 and December 18, 2014, respectively, would be excluded from its internal control assessment, as permitted by guidance issued by the Securities and Exchange Commission. Accordingly, as of and for the year ended December 31, 2014, internal control systems underlying to approximately 60% of consolidated revenues and 24% of consolidated assets (excluding goodwill and identifiable intangible assets), have been excluded from management's evaluation of internal control over financial reporting.

36.     On November 5, 2015, Revolution Lighting filed its quarterly report on Form 10-Q for the period ended September 30, 2015 (the "3Q15 10-Q").   This report contained certifications by Defendants LaPenta and DePalma to attest that the financial information contained therein was accurate and that it disclosed any material changes to Revolution Lighting's internal controls over financial reporting.

37.     The 3Q15 10-Q reported revenue of $37.73 million for the quarter.   It also disclosed a different revenue recognition policy than in prior periods as identified in ¶ 24. Revolution Lighting, in relevant part, stated:

> The Company recognizes revenue for its products upon shipment or delivery to customers in accordance with the respective contractual arrangements, provided no significant obligations remain and collection is probable. For sales that include

customer acceptance terms, revenue is recorded after customer acceptance. It is the Company's policy that all sales are final. Requests for returns are reviewed on a case-by-case basis. As revenue is recorded, the Company accrues an estimated amount for product returns as a reduction of revenue.

The Company recognizes revenue from fixed-price and modified fixed-price contracts for turnkey energy conservation projects using the percentage-of-completion method of accounting. The percentage-of-completion is computed by dividing the actual incurred cost to date by the most recent estimated total cost to complete the project. The computed percentage is applied to the expected revenue for the project to calculate the contract revenue to be recognized in the current period. This method is used because management considers total cost to be the best available measure of progress on these contracts. Contract costs include all direct material and labor costs and indirect costs related to contract performance. Provisions for estimated losses on uncompleted contracts are made in the period in which such losses are determined.

38.    On March 10, 2016, Revolution Lighting filed its annual report on Form 10-K for the period ended December 31, 2015 and reported revenue of $129.66 million. This report contained certifications by Defendants LaPenta and DePalma to attest that the financial information contained therein was accurate and that it disclosed any material changes to Revolution Lighting's internal controls over financial reporting.

39.    On March 9, 2017, Revolution Lighting filed its annual report on Form 10-K for the period ended December 31, 2016 and reported revenue of $172.12 million. This report contained certifications by Defendants LaPenta and DePalma to attest that the financial information contained therein was accurate and that it disclosed any material changes to Revolution Lighting's internal controls over financial reporting.

40.    On March 8, 2018, Revolution Lighting filed its annual report on Form 10-K for the period ended December 31, 2017 and reported revenue of $152.31 million. This report contained certifications by Defendants LaPenta and DePalma to attest that the financial information contained therein was accurate and that it disclosed any material changes to Revolution Lighting's internal controls over financial reporting. Moreover, the report stated that

"management concluded that [the Company's] disclosure controls and procedures were effective at a reasonable assurance level as of the end of the period covered by the report."

41.    On May 1, 2018, Revolution Lighting filed its quarterly report on Form 10-Q for the period ended March 31, 2018 and reported revenue of $33.74 million.  This report contained certifications by Defendants LaPenta and DePalma to attest that the financial information contained therein was accurate and that it disclosed any material changes to Revolution Lighting's internal controls over financial reporting.  Moreover, the report stated, in relevant part:

> [M]anagement concluded that [the Company's] disclosure controls and procedures were effective at a reasonable assurance level as of the end of the period covered by the report.
>
> * * *
>
> Beginning January 1, 2018, we implemented ASC 606, "*Revenue from Contracts with Customers*." Although the new revenue standard had an immaterial impact on our ongoing net income, we did implement changes to our processes related to revenue recognition and the control activities within them. These included the development of new policies based on the five-step model provided in the new revenue standard, new training, ongoing contract review requirements, and gathering of information provided for disclosures.

42.    On August 13, 2018, Revolution Lighting filed its quarterly report on Form 10-Q for the period ended June 30, 2018 (the "2Q18 10-Q") and reported revenue of $36.44 million.

43.    The 2Q18 10-Q reported a material weakness in Revolution Lighting's financial reporting.  Under the heading "Controls and Procedures," the Company stated, in relevant part:

> As of December 31, 2017, our management conducted an evaluation of our internal control over financial reporting and determined that our internal control over financial reporting was effective. At such date we identified a significant deficiency related to the controls over the proper identification of certain collection patterns relevant for bill and hold revenue recognition. Since December 31, 2017, our management has implemented changes in internal control over financial reporting to address this significant deficiency, including changing the design of existing controls and implementing additional transaction level and review

controls. In addition, corporate management is strengthening the internal accounting functions at the divisional or subsidiary level, where appropriate.

At June 30, 2018, we have determined that certain of the transaction level and review controls over revenue recognition have not operated effectively. Specifically, our management has identified control deficiencies related to the proper identification of certain collection patterns and the finalization and review of executed contracts related to bill and hold arrangements and controls over the recording of material costs. We have determined that these control deficiencies aggregate to a material weakness at June 30, 2018.

44.    The above statements identified in ¶¶ 24-43 were materially false and/or misleading, as well as failed to disclose material adverse facts about Revolution Lighting's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) Revolution Lighting was improperly recognizing revenue for certain transactions; (ii) as a result, Revolution Lighting's financial statements were misstated; (iii) Revolution Lighting lacked adequate internal controls over financial reporting; (iv) as a result, Revolution Lighting would be subject to regulatory scrutiny and incur substantial costs; and (v) as a result of the foregoing, Defendants' positive statements about Revolution Lighting's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**The Truth Begins to Emerge**

45.    On October 17, 2018, Revolution Lighting reported preliminary financial results for third quarter 2018 with revenue expected to be $33 million, compared to previously-announced guidance of $40-$41 million.  Revolution Lighting also announced that its CEO had offered to acquire all of the common stock of the Company for a price of $2.00 per share.  In a press release entitled "Revolution Lighting Technologies (RVLT) Provides Preliminary Third Quarter Update and Revises Full Year Guidance," the Company stated, in relevant part:

While the company has been successful in winning a number of important projects, it continues to experience delays in starting and or shipping against these

projects particularly at our multifamily and Tri-State divisions. As a result, we expect revenue of approximately $33 million for the third quarter versus prior third quarter guidance of $40-$41 million. Due to the decline in expected third quarter revenue and our current outlook for the fourth quarter, total revenue for the full year 2018 is expected to approximate $140-$145 million versus our previous full year guidance of $160-$170 million.

We are disappointed in our results and recognize that we need to address our overall business structure, reduce operating costs to a level more aligned with our revenue expectations and address our level of outstanding debt. Over the past six months, our CEO and Chairman, Robert LaPenta, has provided approximately $15 million of capital to fund operations, bringing our total debt, including bank financing, to over $60 million. Mr. LaPenta believes additional capital requirements cannot presently be addressed through third party financing.

Mr. LaPenta has proposed to acquire all of the common stock of the Company that he and his affiliates do not currently own. The text of Mr. LaPenta's letter to the Company's independent directors appears in full below:

We write to you in connection with your roles as independent, disinterested members of the Board of Directors . . .

\* \* \*

Without additional funding, we believe that the Company may be forced to consider various restructuring alternatives in the near term.

Simply put, we do not believe that it is in the best interests of the Company and its stockholders to continue as a publicly traded enterprise, as we believe it currently lacks sufficient scale and the ongoing costs of maintaining the reporting and related infrastructure necessary for public reporting are a significant financial burden on the Company. In addition, we believe the constant pressure to meet quarterly earnings targets has been a significant distraction to the Company's management and has prevented management from appropriately focusing on the long term growth and the development of the Company's business.

***As a result of the above factors, we propose to acquire all of the common stock of the Company that we do not currently own for a price of $2.00 per share.*** Given our familiarity with the Company, we would not need to conduct any further due diligence on the Company and would be in a position to sign a definitive transaction agreement quickly.

(Emphasis in original.)

46.     On this news, Revolution Lighting's stock price fell $0.98 per share, or over 38%,

to close at $1.58 per share on October 17, 2018, on unusually heavy trading volume.

47.    On October 19, 2018, the Company disclosed "an ongoing investigation by the SEC regarding certain revenue recognition practices, including bill and hold transactions that occurred between 2014 through the second quarter of 2018."   In a press release entitled "Revolution Lighting Provides Additional Clarity Regarding its Recent Preliminary Third Quarter Results Issued on October 17, 2018," Revolution Lighting stated the estimated impact on revenue of an accounting policy "based on shipment of products, as opposed to bill and hold revenue recognition."  Revolution Lighting stated, in relevant part:

> Management does not believe that revenue reduction described in the release is due to any loss or deterioration of the Company's business or from the discontinuation of bill and hold transactions that are the subject of an investigation by the Securities and Exchange Commission ("SEC"), as described below, but rather resulted from the timing of the start and completion of programs during the third quarter at the Company's Value and Tristate divisions. These delays, plus a revised more conservative outlook regarding the fourth quarter revenue guidance, resulted in the reduced outlook for the year.

> There is currently an ongoing investigation by the SEC regarding certain revenue recognition practices, including bill and hold transactions that occurred between 2014 through the second quarter of 2018. The Company estimates that the net effect on the reported revenue as a result of, among other things, recording revenue based on shipments of products, as opposed to bill and hold revenue recognition used by the Company, would have been to reduce revenue by $5.0 million, $6.3 million and $6.3 million in each of 2014, 2015 and 2016, respectively, and increase revenue by $11.6 million and $5.1 million in 2017 and 2018, respectively. In connection with the results of the investigation to date, the Company is in the process of assessing its revenue recognition policies and the resulting effects on its financial results, and adopting remedial measures to improve its internal controls as described in its Form 10-Q for the second quarter of 2018. The SEC investigation is ongoing and there can be no assurance as to whether additional remedial measures will be required. The Company will continue to cooperate with the SEC regarding the investigation.

48.    On this news, Revolution Lighting's stock price fell $0.16 per share, or over 10%, to close at $1.43 per share on October 22, 2018, on unusually heavy trading volume.

49.    On November 13, 2018, the Company filed a Notice of Late Filing on Form 12b-25 with the SEC.  Therein, Revolution Lighting stated that it was unable to file its quarterly

report for the period ended September 30, 2018 due to a review by the Company's Audit

Committee of the previously filed financial statements, and the Company provided detail

regarding the incorrect recognition of revenue. Revolution Lighting stated, in relevant part:

> Beginning in 2014, the Company used bill and hold revenue accounting principally for certain contracts in its Multi-family division between its Value Lighting subsidiary and its customers. Upon satisfaction of specific requirements imposed by accounting principles and interpretations of the SEC staff, bill and hold revenue accounting permits a company to record revenue on products segregated for delivery within its own warehouse. Absent satisfaction of these requirements, revenue recognition generally should await delivery of products to customers.
>
> The Company's Audit Committee also is conducting a review to assess the accuracy of the Company's previously filed financial statements, the current focus of which is to review the extent to which the Company incorrectly recognized revenue with respect to bill and hold transactions from 2014 until the second quarter of fiscal 2018, and whether the Company's accounting for those transactions led to material errors in its financial statements. If this ongoing review results in a conclusion that the Company made material errors in its financial statements, the Company would restate the affected financial statements to the extent required. In any such restatement, some revenue recognized in prior periods would be recognized in later periods. While the Audit Committee review is ongoing, the Company will not be able to provide financial statements for the fiscal quarter ended September 30, 2018.

50.     On November 14, 2018, Revolution Lighting announced that its Transaction

Committee was considering an updated proposal from Defendant LaPenta to acquire all of the

Company's outstanding stock for $1.50 per share. Revolution Lighting stated, in relevant part:

> Revolution Lighting Technologies, Inc. (NASDAQ: RVLT) ("Revolution Lighting" or the "Company"), a global provider of advanced LED lighting solutions announced today that on November 14, 2018, the Transaction Committee of the Board of Directors of the Company received a revised proposal from RVL I LLC, an affiliate of the Company's Chairman and CEO, Robert V. LaPenta, to acquire all of the outstanding common stock of the Company. The Transaction Committee is in the process of considering the proposal with assistance from its advisors and will have no comment until its evaluation is complete. The text of the letter to the Transaction Committee of the Company's Board of Directors appears in full below:

We write in connection with our October 16, 2018 letter (the "Offer Letter") regarding our offer to acquire all of the common stock of Revolution Lighting Technologies, Inc. (the "Company") on behalf of RVL 1, LLC (together with its affiliates and certain related persons, "we" or "us") that we do not own.

* * *

Over the last month, we have provided the Company with $7.5 million in debt financing, and we may be required to provide up to an additional $7.0 million in debt financing to fund the Company's operations in the ordinary course through the end of 2018. We further understand that the Company may require additional funding in 2018 in the event of unforeseen circumstances, and we expect the Company to require additional funds to continue its operations beyond 2018, with the extent of such additional required funds depending upon the Company's future results of operation and the amount of time and expense necessary to complete the previously disclosed SEC investigation and the Audit Committee's review of the Company's historical financial statements and other related costs. We intend to continue to fund the Company through continued periodic loans to the extent consistent with what we believe to be the best interests of the Company and its stockholders.

The Company's overall debt as of November 12, 2018 was $65.0 million and, as noted above, will rise further as additional debt financing is provided. This *increased amount of debt, which exceeds the amount that we expected the Company to have at the time of our Offer Letter, as well as an anticipated delay in completing a going private transaction and the developments in the Company's business that it has disclosed, including the SEC investigation and the Audit Committee's review, will necessitate a decrease from the $2.00 per share offer contained in our Offer Letter to a revised offer of $1.50 per share*.

51.     On this news, the Company's stock price fell $0.55 per share, or nearly 40%, to close at $0.85 per share on November 15, 2018, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

52.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Revolution Lighting securities between March 14, 2014, and

November 14, 2018, inclusive (collectively, the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

53.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Revolution Lighting's securities were actively traded on the NASDAQ exchange.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Millions of Revolution Lighting shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Revolution Lighting or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

54.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

55.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

56.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the

Class Period omitted and/or misrepresented material facts about the

business, operations, and prospects of Revolution Lighting; and

(c)     to what extent the members of the Class have sustained damages and the

proper measure of damages

57.     A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as

the damages suffered by individual Class members may be relatively small, the expense and

burden of individual litigation makes it impossible for members of the Class to individually

redress the wrongs done to them.  There will be no difficulty in the management of this action as

a class action.

### UNDISCLOSED ADVERSE FACTS

58.     The market for Revolution Lighting's securities was open, well-developed and

efficient at all relevant times.  As a result of these materially false and/or misleading statements,

and/or failures to disclose, Revolution Lighting's securities traded at artificially inflated prices

during the Class Period.  Plaintiff and other members of the Class purchased or otherwise

acquired Revolution Lighting's securities relying upon the integrity of the market price of the

Company's securities and market information relating to Revolution Lighting, and have been

damaged thereby.

59.     During the Class Period, Defendants materially misled the investing public,

thereby inflating the price of Revolution Lighting's securities, by publicly issuing false and/or

misleading statements and/or omitting to disclose material facts necessary to make Defendants'

statements, as set forth herein, not false and/or misleading.  Said statements and omissions were

materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Revolution Lighting's business, operations, and prospects as alleged herein.

60.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Revolution Lighting's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

61.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

62.    During the Class Period, Plaintiff and the Class purchased Revolution Lighting's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

63.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Revolution Lighting, his/her control over, and/or receipt and/or modification of Revolution Lighting's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Revolution Lighting, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

64.     The market for Revolution Lighting's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Revolution Lighting's securities traded at artificially inflated prices during the Class Period.  On March 17, 2014, the Company's common stock closed at a Class Period high of $38.10 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Revolution Lighting's securities and market information relating to Revolution Lighting, and have been damaged thereby.

65.     During the Class Period, the artificial inflation of Revolution Lighting's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint

causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Revolution Lighting's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Revolution Lighting and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

66.    At all relevant times, the market for Revolution Lighting's securities was an efficient market for the following reasons, among others:

(a)    Revolution Lighting stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Revolution Lighting filed periodic public reports with the SEC and/or the NASDAQ;

(c)    Revolution Lighting regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Revolution Lighting was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the

sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

67.    As a result of the foregoing, the market for Revolution Lighting's securities promptly digested current information regarding Revolution Lighting from all publicly available sources and reflected such information in Revolution Lighting's stock price.  Under these circumstances, all purchasers of Revolution Lighting's securities during the Class Period suffered similar injury through their purchase of Revolution Lighting's securities at artificially inflated prices and a presumption of reliance applies.

68.    Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

69.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be

characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Revolution Lighting who knew that the statement was false when made.

**COUNT I**
**(Violations of Section 10(b) of The Exchange Act**
**and Rule 10b-5 Promulgated Thereunder**
**Against All Defendants)**

70.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

71.    During the Class Period, the Company and the Individual Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Revolution Lighting's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, the Company and the Individual Defendants, and each of them, took the actions set forth herein.

72.    The Company and the Individual Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a

course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Revolution Lighting's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. The Company and the Individual Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

73.    The Company and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Revolution Lighting's financial well-being and prospects, as specified herein.

74.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Revolution Lighting's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Revolution Lighting and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

75.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts:  (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of

their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

76.    The Company and the Individual Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Revolution Lighting's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by the Company and the Individual Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, these defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

77.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of

Revolution Lighting's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by the Company and the Individual Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by the Company and the Individual Defendants, but not disclosed in public statements by these defendants during the Class Period, Plaintiff and the other members of the Class acquired Revolution Lighting's securities during the Class Period at artificially high prices and were damaged thereby.

78.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Revolution Lighting was experiencing, which were not disclosed by the Company and the Individual Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Revolution Lighting securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

79.     By virtue of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

80.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## COUNT II
### (Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants)

81.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

82.     The Individual Defendants acted as controlling persons of Revolution Lighting within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

83.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

84.     As set forth above, Revolution Lighting and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of

Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  March 14, 2019                    Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
         ahood@pomlaw.com
         jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603

Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ**
**& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email:  peretz@bgandg.com

*Attorneys for Plaintiff*

**Submission Date**

2019-02-21 10:57:19

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.    I  make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Revolution Lighting Technologies, Inc. ("Revolution Lighting" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.    I did not purchase or acquire Revolution Lighting securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Revolution Lighting securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Revolution Lighting securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury that the foregoing is true and correct.

## Name

**Print Name**

Chris Hubner

## Acquisitions

## Sales

## Documents & Message

(redacted)

**Signature**



**Full Name**

Chris Hubner



(redacted)

**Revolution Technologies, Inc. (RVLTF)**                              **Hubner, Chris**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 8/6/2018 | Purchase | 2,500 | $2.7550 |
| 8/6/2018 | Purchase | 1,100 | $2.7645 |
| 8/6/2018 | Purchase | 100 | $2.7660 |
| 8/6/2018 | Purchase | 24 | $2.7745 |
| 8/6/2018 | Purchase | 100 | $2.7845 |
| 8/6/2018 | Purchase | 4,676 | $2.7844 |
| 8/14/2018 | Purchase | 2,800 | $2.3300 |
| 8/14/2018 | Purchase | 1,500 | $2.3320 |
| 8/17/2018 | Purchase | 100 | $2.5590 |
| 8/17/2018 | Purchase | 1,450 | $2.5600 |
| 8/17/2018 | Purchase | 200 | $2.5700 |
| 8/17/2018 | Purchase | 1,525 | $2.5890 |
| 8/17/2018 | Purchase | 1,925 | $2.5900 |
| 8/17/2018 | Purchase | 4,800 | $2.6000 |
| 8/17/2018 | Purchase | 113 | $2.6000 |
| 8/17/2018 | Purchase | 9,887 | $2.6200 |